In re Rudrakumaran

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## <u>SUMMARY ORDER</u>

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 15th day of February, two thousand thirteen.

PRESENT:
> José A. Cabranes,
> Robert D. Sack,
> Richard C. Wesley,
> > *Circuit Judges*.

_____

In re Visuvanathan Rudrakumaran,

        Attorney.

10-90037-am

**ORDER OF
GRIEVANCE PANEL**

_____

For Visuvanathan Rudrakumaran:    Jonathan R. Nelson, New York, New York.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the findings and recommendations of this Court's Committee on Admissions and Grievances ("the Committee") are adopted, except as discussed below, and Visuvanathan Rudrakumaran is PUBLICLY REPRIMANDED for his misconduct in this Court.

## I. Summary of Proceedings

By order filed in April 2010, this Court referred Rudrakumaran to the Committee for investigation of the matters described in that order and preparation of a report on whether he should be subject to disciplinary or other corrective measures. During the Committee's proceedings, Rudrakumaran had the opportunity to address the matters discussed in the Court's referral order and to testify under oath at hearings held in November 2010 and March 2011, which were presided over by Committee members Eileen M. Blackwood, Evan A. Davis, Michael D. Patrick, and Gerald Walpin. Thereafter, the Committee filed with the Court the record of the Committee's proceedings and its report and recommendations, and Rudrakumaran responded.

The Committee concluded in its report that there was clear and convincing evidence that Rudrakumaran had engaged in misconduct warranting the imposition of discipline. *See* Report at 12-13. The Committee found that Rudrakumaran had, *inter alia*: (a) defaulted on scheduling orders in twenty-seven cases, resulting in their dismissal, although he succeeded in reinstating eight of them; (2) created an unnecessary and substantial risk of potential injury to those clients who eventually received relief after their defaulted cases were reinstated; (3) caused injury or potential injury, through lack of reasonable diligence, to two clients who were denied reinstatement of their defaulted cases; (4) failed to

2

withdraw seventeen cases despite knowing that the clients did not wish to proceed or that other circumstances rendered further proceedings unnecessary; and (5) on a number of other occasions, violated this Court's rules and orders by untimely filing various documents. *Id.* at 5-10. After considering various aggravating and mitigating factors, *id.* at 12-13, the Committee recommended that Rudrakumaran be publicly reprimanded, and required to complete eight hours of continuing legal education ("CLE") classes, in law office management, and to submit periodic reports concerning his caseload, *id.* at 13.

In his response to the Committee's report, Rudrakumaran, *inter alia*, acknowledged that a reprimand was warranted (noting that he had previously suggested a private reprimand, in contrast to the public reprimand recommended by the Committee), but disputed several of the Committee's findings, which are discussed below.

**II. Requests for Clarification**

As an initial matter, we acknowledge that Rudrakumaran submitted a total of five character letters, and not just the single letter mentioned in the Committee's report. We also acknowledge Rudrakumaran's clarification of his volunteer work for the Liberation Tigers of Tamil Eelam ("LTTE"): (a) that his international trips relating to that work occurred in 2003 to 2006, and not 2005 to 2006; (b) that he was not an LTTE employee or contractor, or under its direction or control; and (c) that his LTTE work was in compliance with federal law. For purposes of the

present decision, we accept Rudrakumaran's assertions about the dates of his LTTE work. Additionally, we do not read the Committee's report as reaching any conclusions about the nature of Rudrakumaran's relationship with the LTTE, nor does this panel reach any such conclusions. Those matters are beyond the scope of these proceedings – due to lack of relevance or lack of evidence upon which to reach any conclusions. Thus, we reject, as unnecessary, Rudrakumaran's request that the Committee's references to his "work for the LTTE" be stricken.

**III. Default in *Razan v. Ashcroft*, 04-3259**

Rudrakumaran objects to the following Committee findings concerning his conduct in *Razan v. Ashcroft*:

> In *Razan v. Ashcroft*, 04-3259, Rudrakumaran testified that he failed to file the relevant brief on time because he had lost contact with the client. After this Court denied a motion to reinstate the petition, Rudrakumaran summarily informed the client five months later that his case had been dismissed without explanation as to why. This was *unfair to the client* because had the client known the reason why the appeal was dismissed, *he could have considered further steps*.

Report at 12 (emphasis added by Rudrakumaran).

Although Rudrakumaran concedes "that his conduct led to the dismissal of his client's case, [and] that [he] should have informed his client of the dismissal immediately upon its occurrence," he argues that the timing of his communications with his client "was neither unfair nor harmful to the client." Response to Committee Report at 5. Rudrakumaran asserts that (a)

4

his client had left the United States while the case was pending, without leaving Rudrakumaran current contact information; (b) between the denial of the reinstatement motion in May 2006 and his July 2006 letter to the client, he had tried repeatedly to contact his client by telephone, and had left voice mail messages; (c) his July 2006 letter informed the client of the dismissal (without explaining the reason) and urged the client to contact Rudrakumaran immediately; (d) the letter came back undelivered, with a notation that the client had moved two years before; and (e) in or about January 2007, the client telephoned him from Sri Lanka, Rudrakumaran informed him of the default dismissal, and the client thereafter took no action. Response at 7-8.

Under the circumstances, Rudrakumaran argues, he treated his client fairly after the default since he sought reinstatement, submitted a proposed brief and appendix, and attempted to contact the client after reinstatement was denied. *Id.* at 9. He also argues that the client received full information concerning the dismissal at the earliest possible date, since Rudrakumaran lacked any means of contacting him prior to the client's January 2007 telephone call, and that his failure to contact the client "earlier" – possibly referring to the date of the dismissal or some other time preceding the denial of reinstatement – caused the client no practical harm because Rudrakumaran lacked "any effective means to re-establish contact with him" at those earlier junctures. *Id.*

5

Rudrakumaran's hearing testimony was consistent with his assertions in his response to the Committee's report, *see* Nov. 2010 Transcript at 131-42, and the Committee made no finding concerning the credibility of that testimony. Thus, we assume that the Committee credited Rudrakumaran's testimony.

Based on the Committee's record, we find that clarification of the Committee's findings concerning *Razan* is necessary–in Rudrakumaran's favor in some respects, but not in others. First, it is clear from Rudrakumaran's hearing testimony that his failure to file his brief in *Razan* was due to his negligence, *see id.* at 133 ("I missed the deadline. It's negligence on my part."), not simply his loss of contact with his client as suggested by the above-quoted findings. Second, Rudrakumaran did not inform the client of the dismissal five months after reinstatement was denied as stated by the Committee; instead, the hearing testimony and *Razan* docket indicate that: (a) Rudrakumaran's July 2006 letter was sent five months after the February 2006 dismissal and two months after the May 2006 denial of reinstatement, (b) Rudrakumaran attempted to contact his client by telephone several times between the denial of reinstatement and the drafting of his July 2006 letter, and (c) Rudrakumaran's July 2006 letter constituted merely an attempt to notify his client of the dismissal, and not actual notice, since the letter was returned as undeliverable. *See id.* at 132-38; *Razan*, 04-3259, docket entries from 2-13-06 through 5-26-06.

As for the unfairness found by the Committee, we agree that Rudrakumaran treated his client unfairly when he failed to comply with this Court's briefing deadline and caused the dismissal of the case, and when he failed to timely attempt to inform his client of an important development in his case, the dismissal. We do not know whether Rudrakumaran could have reached his client had he tried to do so at some point between the February 2006 dismissal and the unspecified date he first attempted to contact the client after the May 2006 denial of reinstatement. We also do not know if such earlier notification would have altered the result. We further find that Rudrakumaran was unfair to his client when he allowed three months to pass after the default dismissal before filing his reinstatement motion, since a swift request for reinstatement may have been more favorably viewed by the Court. While Rudrakumaran may have been "fair" to his client when, viewed in isolation, he made the effort to seek reinstatement and thereafter attempted to notify the client of the result, the primary damage had already been done by that point. Thus, we adopt the Committee's "unfairness" finding to the extent discussed above, and its earlier finding that Rudrakumaran's conduct in *Razan* reflected "a lack of reasonable diligence causing injury or potential injury to the client." Report at 7.

**IV. Refund of Client Fee**

Rudrakumaran concurs with the Committee's finding that, in light of his mismanagement of Razan's case, he should have refunded

7

Razan's fee in full. He further states that, if he remains unable to contact Razan, he is willing to donate the fee to the New York State Lawyers' Fund for Client Protection, providing he is directed to do so by the Court.

New York Rule of Professional Conduct 1.15(f), entitled "Missing Clients," provides as follows:

> Whenever any sum of money is payable to a client and the lawyer is unable to locate the client, the lawyer shall apply to the court in which the action was brought if in the unified court system, or, if no action was commenced in the unified court system, to the Supreme Court in the county in which the lawyer maintains an office for the practice of law, for an order directing payment to the lawyer of any fees and disbursements that are owed by the client and the balance, if any, to the Lawyers' Fund for Client Protection for safeguarding and disbursement to persons who are entitled thereto.

We direct Rudrakumaran to do the following: (a) within one week of this order, attempt to contact Razan for purposes of refunding his fee, and make such further attempts as seem reasonable under the circumstances; (b) if unable to contact Razan within thirty days of this order, promptly apply to the New York Supreme Court in the appropriate county for an order consistent with Rule 1.15(f); and (c) every sixty days, beginning with the date of this order, and until further notice, submit a status report on the refund issue to counsel to this panel. The status report must be in the form of a detailed declaration made under penalty of perjury.

8

**V. Default in *Lathpandurage v Gonzales*, 05-3327**

In *Lathpandurage v. Gonzales*, Rudrakumaran received two extensions of time to file his brief, but nonetheless failed to do so, causing the case to be dismissed based on his default. *See Lathpandurage*, 05-3327 (2d Cir. Apr. 24, 2006) (dismissal order). The Committee found that Rudrakumaran had acted recklessly when he "continued to push his luck at the risk of his client," after this Court had stated in the first order granting him an extension that "any further extension request ... will not be granted absent extraordinary circumstances." *Id.* (2d Cir. Feb. 13, 2006) (order granting extension of time).

Rudrakumaran concedes that he was negligent in causing the default dismissal in *Lathpandurage*, but challenges the Committee's statement that his conduct was reckless. *See* Response to Committee Report at 10-17. Specifically, he argues that his conduct did not meet the definition of recklessness under New York law, which, he asserts, "'requires evidence that "the actor has intentionally done an act of an unreasonable character in disregard of a known or obvious risk that was so great as to make it highly probable that harm would follow" and has done so with conscious indifference to the outcome.'" *Id.* at 16 (quoting *Saarinen v. Kerr*, 84 N.Y.2d 494, 501 (1994) (quoting Prosser and Keeton, Torts § 34, at 213 (5th ed. 1984))). He states that, while "it is perhaps debatable whether [he] should have been aware ... of risk so great that it was

9

'highly probable that harm would follow,'" he insists that he "was never 'consciously indifferent to the outcome' of his actions or inactions." *Id.* at 17.

The definitions of "reckless" and "recklessness" vary depending on the forum and type of proceeding. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 836-37 (1994)("The civil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known. The criminal law, however, generally permits a finding of recklessness only when a person disregards a risk of harm of which he is aware.") (citations omitted).[1]

---

[1]  "Reckless" is defined by Black's Law Dictionary as:

> Characterized by the creation of a substantial and unjustifiable risk of harm to others and by a conscious (and sometimes deliberate) disregard for or indifference to that risk; heedless; rash.  Reckless conduct is much more than mere negligence: it is a gross deviation from what a reasonable person would do.

Black's Law Dictionary (9th ed. 2009).  "Recklessness" is defined as:

> 1. Conduct whereby the actor does not desire harmful consequence but nonetheless foresees the possibility and consciously takes the risk.  Recklessness involves a greater degree of fault than negligence but a lesser degree of fault than intentional wrongdoing. ... 2. The state of mind in which a person does not care about the consequences of his or her actions.

*Id.; see also* Restatement (Second) of Torts § 500 cmt. a (1965) ("Recklessness may consist of either of two different types of conduct.  In one the actor knows, or has reason to know, ... of facts which create a high degree of risk of physical harm to

The Committee did not find that Rudrakumaran was "consciously indifferent to the outcome" when he failed to file his brief pursuant to the Court's scheduling orders, and the record does not contain clear and convincing evidence of such conscious indifference. However, the record does support a finding that Rudrakumaran acted recklessly because he knew the relevant facts and unreasonably failed to appreciate the high degree of risk involved. We therefore adopt the Committee's finding of recklessness as so clarified.

**VI. Disposition**

We conclude, consistent with our prior disciplinary decisions, that Rudrakumaran's misconduct was sufficiently egregious to warrant a public reprimand. *See In re Payne*, __ F.3d __, 2013 WL 297728 (2d Cir. 2013) (citing prior disciplinary decisions).

Upon due consideration of the Committee's report, the underlying record, Rudrakumaran's submissions, and the matters discussed above, it is hereby ORDERED that Rudrakumaran is PUBLICLY REPRIMANDED for his misconduct in this Court. It is further ORDERED that Rudrakumaran:

> (a) complete, within one year of the date of this decision, at least eight hours of live in-class CLE

---

another, and deliberately proceeds to act, or to fail to act, in conscious disregard of, or indifference to, that risk. In the other the actor has such knowledge, or reason to know, of the facts, but does not realize or appreciate the high degree of risk involved, although a reasonable man in his position would do so.").

11

instruction in law office/practice management. The required CLE classes must be taken in addition to the regular CLE requirements applicable to all members of the New York bar, and taught by CLE providers accredited by that bar. Rudrakumaran must submit information about proposed CLE classes directly to the Committee's secretary, who will inform him whether the Committee agrees that the proposed classes satisfy his obligation.

(b) certify his completion of the above-described CLE classes by sworn statement filed with both this panel and the Committee's secretary within seven days after the end of the one-year period. The Committee may modify the CLE requirements and deadlines, either on motion or *sua sponte*.

(c) submit, for the next two years beginning with the date of this decision, biannual status reports to the Committee's secretary, providing an explanation for any "late briefs or motions, or any non-excused non-compliance with a scheduling order of any sort before any Court." Report at 13. The first status report must cover the period beginning with the date of the Committee's report and ending six months from the date of this decision.

(d) comply with the refund procedures outlined in section IV of this decision.

(e) disclose this decision, and its appendices, to all courts and bars of which he is currently a member, and as required by any bar or court rule or order.

Finally, the Clerk of Court is directed to release this order

to the public by posting it on this Court's web site and providing

copies to the public in the same manner as all other unpublished

decisions of this Court, and to serve a copy on Rudrakumaran, this

Court's Committee on Admissions and Grievances, the attorney

disciplinary committee for the New York State Appellate Division,

First Department, and all other courts and jurisdictions to which

12

this Court distributes disciplinary decisions in the ordinary course.[2]

                                        FOR THE COURT:
                                        Catherine O'Hagan Wolfe, Clerk




                                        By:  Michael Zachary
                                             Counsel to the Grievance Panel

---

[2] Counsel to this panel is authorized to provide, upon request, documents from the record of this proceeding to other attorney disciplinary authorities.  While we request that all such documents remain confidential to the extent circumstances allow, we of course leave to the discretion of those disciplinary authorities the decision of whether specific documents, or portions of documents, should be made available to any person or the public.

13

**Text of April 2010 Order**

For the reasons that follow, Visuvanathan Rudrakumaran is referred to this Court's Committee on Admissions and Grievances for investigation of the matters described below and preparation of a report on whether he should be subject to disciplinary or other corrective measures. *See* Second Circuit Local Rule 46.2. We express no opinion here as to an appropriate disposition. The Committee may, of course, in the first instance, determine the appropriate scope of its investigation.

A review of the 96 cases in which Rudrakumaran is listed as an attorney of record reveals that his defaults on this Court's scheduling orders caused the dismissal of at least 27 cases. *See* cases docketed under 02-4066-ag (reinstated), 02-4363-ag (reinstated), 02-4545-ag, 03-4038-ag, 03-4083-ag (case deemed withdrawn with prejudice where counsel's motion to hold appeal in abeyance was filed two weeks after the terms of stipulated withdrawal had expired), 03-4546-ag, 03-4547-ag, 03-4741-ag (reinstated), 03-40258-ag, 03-40566-ag, 04-0309-ag (reinstated), 04-2836-ag (reinstated), 04-3259-ag, 04-4136-ag, 04-5186-ag, 04-6272-ag, 05-0117-ag, 05-0915-ag (reinstated), 05-1171-ag, 05-1530-ag (reinstated), 05-2723-ag (reinstated), 05-3327-ag, 05-4193-ag, 05-4452-ag, 06-2161-ag, 06-3366-ag, and 06-3997-ag. Although Rudrakumaran requested and was granted extensions of time in many of these cases, the final briefing deadlines in each passed without Rudrakumaran requesting an extension of time (or an additional extension of time), a stay of proceedings, or leave to voluntarily dismiss the petitions for review. Ultimately, eight of these 27 cases were reinstated following motions filed by Rudrakumaran, in which he usually attributed his failure to file the briefs to various competing "professional and personal commitments." *See, e.g.,* Dkt Nos. 04-0309-ag at 11/30/2006 Entry, 05-0915-ag at 2/22/2006 Entry, 05-2723-ag at 5/31/2006 Entry.

Of the other 19 defaulted cases, Rudrakumaran filed unsuccessful motions to reinstate in two of them, again premised on competing "professional and personal commitments." *See* Dkt Nos. 04-3259-ag at 5/15/2006 Entry & 05-3327-ag at 5/23/2006 Entry. He did not seek to reinstate any of the remaining 17 cases. Notably, in one such dismissed case, *Kamal v. Gonzales*, Rudrakumaran sought two extensions of time, only to then file a motion to withdraw his client's case. *See* Dkt. No. 05-1171-ag at 11/14/2006 Entry. After this Court denied that motion on the basis that Rudrakumaran had to submit a statement showing the client was, in fact, requesting withdrawal, *id.* at 11/22/2006,

14

the case was dismissed for failure to file a brief, *id.* at 1/9/2007. In a similar case, *Lakshman-Seneviratne v. Ashcroft*, the petitioner sought reinstatement on the grounds that Rudrakumaran had provided ineffective assistance of counsel. *See* Dkt. No. 04-4136-ag at 7/17/2008 Entry. Appearing *pro se*, the petitioner stated that he had "honestly believed" a brief had been filed on his behalf, until Rudrakumaran informed him several months later that the case had been dismissed, without explaining why. *Id.* at ¶¶ 3-4. Lakshman-Seneviratne averred that he had only discovered a brief had never been filed when he checked the court record. *Id.* at ¶ 5. This Court denied petitioner's reinstatement motion in November 2008. *Id.* at 11/19/2008 Entry.

In addition to the above-noted default dismissals, Rudrakumaran has repeatedly disregarded this Court's scheduling orders in a number of other cases. A review of these cases indicates that Rudrakumaran has filed late briefs at least nine times. *See* cases docketed under 03-4365-ag (brief received 6 days late), 03-41075-ag (motion to file brief one month past deadline), 04-4287-ag (motion to file brief two weeks past deadline), 05-1072-ag (motion to file brief one month past deadline), 08-3028-ag (brief filed 12 days past deadline), 08-3687-ag (ordered to show cause why case should not be dismissed due to default; response filed one day late and brief filed 39 days late), 08-3975-ag (ordered to show cause why case should not be dismissed due to default; motion for extension granted), 08-5616-ag (motion to file brief nine days past deadline), and 08-5770-ag (brief filed 9 days past deadline). Moreover, on at least three other occasions, Rudrakumaran filed untimely motions for extensions of time. *See* 05-5354-ag (two extension motions filed after due dates for brief), 05-6580-ag (one motion filed after due date), and 08-2396-ag (same; and motion filed after Court stated that no further extensions would be granted). Furthermore, in *Zain v. Holder*, the Government moved to dismiss the petition for lack of jurisdiction, whereupon Rudrakumaran sought and was granted two extensions of time to file opposition papers, only to then file them one week late. *See* Dkt. No. 09-0660-ag at 7/10/2009 & 8/5/2009 Entries (extension orders) and 8/26/2009 Entry (order granting leave to file out of time). This Court permitted the late filing, but granted the Government's motion to dismiss. *Id.* at 10/26/2009 Entry. Most recently, in *Salazar de Rivera v. Holder*, Rudrakumaran not only failed to file his brief by the due date but, in later moving to file out of time, he failed to provide a motion information statement, supporting papers, proof of service, or the proper number of copies. *See* Dkt. No. 09-4272-ag at 2/23/2010 Entry. After the defective motion was corrected, Rudrakumaran was given until March 30, 2010 to file his brief. *Id.* at 3/4/2010 Entry. As of April 5, 2010, the brief has not been filed.

15

Additionally, in eight cases, Rudrakumaran filed stipulations to withdraw the cases with prejudice only after his briefing deadlines had passed. *See* cases docketed under 02-4054-ag (withdrawn two weeks late), 02-4369-ag (withdrawn three months late), 03-4556-ag (withdrawn three days late), 03-4685-ag (withdrawn ten months late), 03-40090-ag (withdrawn three weeks late), 03-41169-ag (withdrawn three months late), 07-2354-ag (withdrawn two weeks late, after three extensions granted), and 08-5064-ag (withdrawn two weeks late). On at least six occasions, Rudrakumaran has also filed untimely C/A Forms. *See* cases docketed under 04-4287-ag, 05-2594-ag, 08-2396-ag, 08-3687-ag, 09-0660-ag (order to show cause why the case should not be dismissed, due to non-filed forms issued 3/20/2009), and 09-3425-ag. In the last-mentioned case, *Oudit v. Holder*, Rudrakumaran's failure to file the C/A Forms ultimately resulted in the case's dismissal, although it has since been reinstated. *See* Dkt. No. 09-3425-ag at 1/6/2010 (dismissal order) & 3/16/2010 (order granting reinstatement) Entries.

Notably, this pattern of late filing and belated withdrawals has not been limited to Rudrakumaran's practice in this circuit. In October 2007, for example, four judges from the Ninth Circuit rebuked Rudrakumaran for withdrawing his client's petition for review, after the Court had devoted significant time and resources to reconsidering the case *en banc*. *See Suntharalinkam v. Gonzales*, 506 F.3d 822 (9th Cir. 2007). The issue there concerned the Ninth Circuit's approach to the immigration judge's credibility findings and, although a majority of judges granted Rudrakumaran's withdrawal motion (on the condition that the panel's previous opinion would be vacated as well), the dissenting panel noted that the petitioner "had absolutely nothing to gain by withdrawing [the] petition for review," and that Rudrakumaran's withdrawal motion was an "obvious effort at subverting the orderly development of the law through artful dismissal of the petition long past the eleventh hour." *Id.* at 822-26, 831. To that end, the dissenting judges argued that the panel should instead "exercise [its] discretion by requiring" Rudrakumaran to provide, as this Court has required, a "declaration from [the] petitioner himself, confirming that he wishes to dismiss his petition." *Id.* at 831. Furthermore, earlier in that litigation, Rudrakumaran was chastised by one of the same dissenting judges for filing an untimely motion for leave to file an oversized supplemental brief. *See Suntharalinkam v. Gonzales*, 488 F.3d 1121-22 (9th Cir. 2007). Although the motion was granted, the judge "[found] it vexing" that Rudrakumaran did not file the motion in time; rather, "he sent in a non-conforming brief the day after it was due." *Id.* at 1121. Such filing tactics, the judge noted, not only flout the Court's rules, but "force [it] … to choose between consenting to

16

the filing of a non-conforming brief and disrupting the briefing schedule." *Id.*

Finally, a review of this Court's orders reveals two cases in which Rudrakumaran failed to raise all pertinent issues on appeal or raised claims that he had failed to exhaust at the administrative level. In *Qing Lin v. Gonzales*, this Court denied the petition for review on the basis that the Board of Immigration Appeals had "effectively illustrated" that the immigration judge's determination that relocation was "'not a viable alternative'" was clearly erroneous. *See* Dkt. No. 06-3433-ag at 8/20/2007 Entry. Although dispositive of the petition, the order noted that the petitioner "ha[d] not challenged this point in her brief" and the claim was therefore deemed waived. *Id.* In a later case, *Siuabalasingam v. Holder*, where Rudrakumaran represented the petitioner both here and before the BIA, he sought CAT relief in the petition for review, but failed to raise that claim on appeal to the BIA. Accordingly, this Court dismissed the request for CAT relief, based on Rudrakumaran's failure to exhaust the claim. *See* Dkt. No. 08-2064-ag at 8/17/2009 Entry.

[text redacted]

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

By: Michael Zachary
    Counsel to the Grievance Panel

17

## November 2011 Report of the Committee on Admissions and Grievances

### I. Introduction

By Order dated April 6, 2010 ("Referral Order"), the United States Court of Appeal: the Second Circuit ("the Court") referred Visuvanathan Rudrakumaran to this Committee fc investigation of his conduct before the Court and preparation of a report on whether he shou subject to disciplinary or other corrective measures.

Rudrakumaran is an active immigration practitioner before this Court and other tribu including a number of other Circuit Courts of Appeal. The Court's Order raises a number c areas of concern regarding Rudrakumaran's conduct, including (1) repeated defaults on scheduling orders, many of which resulted in his clients' cases being dismissed; (2) late filii briefs, C/A Forms, extension motions, and withdrawal notices; and (3) failure to raise all pertinent issues on appeal or raising claims that had not been exhausted at the administrativ level.

The Committee recommends that Rudrakumaran be publically reprimanded for his conduct, and that he be required to complete eight hours of CLE in law office management, to submit biannual status reports for two years of the frequency, if any, of late-filed briefs o motions, or any non-excused failure to comply with any scheduling order or rule of any sort The following constitutes the Committee's report and recommendation to impose discipline Rudrakumaran.

### II. This Disciplinary Proceeding

On May 13, 2010, this Committee issued a Notice of Referral and Proceeding to Mr Rudrakumaran. Rudrakumaran provided a number of submissions to the Committee: (1) a written response to the Referral Order, dated June 14, 2010; (2) a character letter from Gene Getachew, Esq., dated June 14, 2010; (3) documents and/or records in four submissions ma

"A" through "KKK," either on his own initiative or at the request of the Committee; (4) Declaration of Kathryn Dennler, dated December 23, 2010; (5) a copy of a favorable decision, dated July 7, 2011 from this Court where Rudrakumaran represented the petitioner *pro bono*; and (6) a final written submission, dated June 3, 2011.

Committee members conducted hearings on November 16, 2010, and March 29, 2011. Present for the Committee were Eileen Blackwood, Evan A. Davis, Michael Patrick and Gerald Walpin. Rudrakumaran was the only witness at both hearings and was represented by Mr. Jonathan Robert Nelson, Esq.

## III. Factual Background

The following facts are taken from court records and from Rudrakumaran's written submissions and testimony.

After completing his legal studies in Sri Lanka, Rudrakumaran received an L.L.M. degree with a specialization in International Law and Comparative Law from the Southern Methodist University. Rudrakumaran spent the next four years as a visiting associate and special student of Harvard Law School. He has been practicing law in the United States for seventeen years, fourteen of which as a solo practitioner. The primary focus of Rudrakumaran's practice has been immigration law; Rudrakumaran estimates that between 60 and 70 percent of his practice is at the appellate level. Transcript of Nov. 16, 2010 Hearing ("Nov. Tr.") 38:5-13. Rudrakumaran estimated that he has handled between 2000 and 3000 cases over the course of his career. Transcript of Mar. 29, 2011 ("Mar. Tr.") 268:2-4. He is admitted before the First, Second, Third, Fourth, Seventh, Eighth, Ninth, Tenth and Eleventh Circuits.

In addition to his law practice, Rudrakumaran has been heavily involved with the Liberation Tigers of Tamil Eelam ("LTTE"), serving first as legal advisor to the LTTE from 2002-2006 during peace talks with the Sri Lankan government. After the peace talks collapsed and war broke out in 2009, Rudrakumaran helped organized a transnational government-in-exile. In November 2010, he was elected prime minister of the transnational government of Tamil Eelam. Rudrakumaran estimated that he currently spends roughly 60% of his time on his political advocacy, which he has never been paid for. Nov. Tr. 26:14-16. Rudrakumaran estimates that he works an average of 80 hours per week. *Id.* at 14:20. Rudrakumaran's involvement with the Tamil movement has also required extensive international travel; Rudrakumaran estimated that during the subject period of the Referral Order (principally 2005 and 2006) he took roughly 30 international trips in connection with his work for the LTTE. Nov. Tr. 20:15-18.

## IV. The Committee's Role and Standard of Review

Under the Rules of the Committee on Admissions and Grievances for the United States Court of Appeals for the Second Circuit ("Committee Rules"):

An attorney may be subject to discipline or other corrective measures for any act or omission that violates the rules of professional conduct or responsibility of the state or other jurisdiction where the attorney maintains his or her principal office. . . . An attorney also may be subject to discipline or other corrective measures

2

for any failure to comply with a Federal Rule of Appellate Procedure, a Local Rule of the Court, an order or other instruction of the Court, or a rule of professional conduct or responsibility of the Court, or any other conduct unbecoming a member of the bar.

Committee Rule 4; *see also* Fed. R. App. P. 46(c) ("[A] court of appeals may discipline an attorney who practices before it for conduct unbecoming a member of the bar or for failure to comply with any court rule.").

"Conduct unbecoming a member of the bar" includes "conduct contrary to professional standards that shows an unfitness to discharge continuing obligations to clients or the courts, or conduct inimical to the administration of justice. More specific guidance is provided by case law, applicable court rules, and 'the lore of the profession,' as embodied in codes of professional conduct." *In re: Snyder*, 472 U.S. 634, 645 (1985).

The Committee's "finding that an attorney has engaged in misconduct or is otherwise subject to corrective measures must be supported by clear and convincing evidence." Committee Rule 7(h). If this burden is met, the Committee will then generally consider (a) the duty violated; (b) the lawyer's mental state; (c) the actual or potential injury caused by the lawyer's misconduct; and (d) the existence of aggravating or mitigating factors, in order to determine the sanction, if any, to recommend to the Court. *See* American Bar Association's Standards for Imposing Lawyer Sanctions ("ABA Standards") §§ 3.0 et seq., 9.0 et seq. The Committee may recommend to the Court's Grievance Panel a range of sanctions, including disbarment, suspension, public or private reprimand, monetary sanction, removal from *pro bono* or Criminal Justice Act panels, referral to other disciplinary bodies, supervision by a special master, counseling or treatment, or "such other disciplinary or corrective measures as the circumstances may warrant." Committee Rule 6.

## V.    The Legal Standard for Identifying Misconduct

Courts have consistently treated neglect of client matters and ineffective or incompetent representation as sanctionable conduct. *See, e.g., Gadda v. Ashcroft*, 377 F.3d 934, 940 (9th Cir. 2004); *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 133 (2d Cir. 2004); *In re Dilmaghani*, 78 A.D.3d 39, 49 (N.Y. App. Div. 2010); *Matter of Rabinowitz*, 189 A.D.2d 402, 408 (N.Y. App. Div. 1993); *United States v. Song*, 902 F.2d 609 (7th Cir. 1990); *Matter of Kraft*, 148 A.D.2d 149 (N.Y. App. Div. 1989); *In re Bithoney*, 486 F.2d 319 (1st Cir. 1973).

Such conduct is also sanctionable under the applicable professional rules and standards. Because Rudrakumaran's conduct at issue in this matter primarily occurred prior to the adoption of the New York Rules of Professional Conduct in 2009, it is governed by the New York Lawyer's Code of Professional Responsibility (the "Code"). References to the applicable provisions of the Code will be to the Disciplinary Rules ("D.R.") and Ethical Considerations ("E.C."). Citations to the current New York Rules of Professional Conduct ("Rules") are for reference only to demonstrate the continuity of an attorney's responsibilities and ethical obligations under both the old and current frameworks. Additionally, the ABA Standards call for a range of sanctions from reprimand to disbarment for various forms of "lack of diligence" and

"lack of competence." ABA Standards §§ 4.4, 4.5. While not binding, the ABA Standards provide additional guidance in this matter.

With respect to Rudrakumaran's conduct that is the subject of this Report and Recommendation, the applicable provisions of the Code make clear that "[a] lawyer shall not . . . [n]eglect a legal matter entrusted to the lawyer." D.R. 6-101(a)(3). Additionally, a lawyer has a duty to represent his or her client "zealously," D.R. 7-101, E.C. 7-1, and should "be punctual in fulfilling all professional commitments," E.C. 7-38. The Code also prohibits a lawyer from engaging in conduct that is prejudicial to the administration of justice or adversely reflects on the lawyer's fitness as a lawyer. *See* D.R. 1-102(A)(5), (7); *see also* Rules 8.4(d), (h). This Court has also made clear in the context of intentional defaults on scheduling orders that "an appellant's counsel of record who determines that the appeal will not proceed for any reason is required to inform the Court of the situation and seek to either withdraw the appeal or withdraw as counsel. Counsel of record may not end the representation of a client without taking affirmative action, or end an appeal by allowing its dismissal for lack of prosecution." *In re Yan*, 390 F. App'x. 18, 21 (2d Cir. 2010).

## VI.    Alleged Misconduct

As of the date of the Referral Order, Rudrakumaran was attorney of record in 96 cases before the Court. The Referral Order indicates that Rudrakumaran's failure to comply with scheduling orders resulted in the dismissal of at least 27 cases. Eight of those cases were reinstated following motions filed by Rudrakumaran, in which he usually attributed his failure to file the brief to various "professional and personal commitments." Of the other 19 cases, Rudrakumaran unsuccessfully moved to reinstate in two cases, both times blaming his default on "professional and personal commitments." Rudrakumaran did not seek to reinstate the 17 remaining cases.

In addition to the 27 cases which were dismissed for failing to comply with scheduling orders, the Referral Order also notes other patterns of disregard for scheduling orders: Rudrakumaran filed late briefs at least nine times; Rudrakumaran filed untimely motions for extension of time on at least three occasions; Rudrakumaran filed stipulations to withdraw after briefing deadlines had passed in at least eight cases; and Rudrakumaran filed C/A Forms out of time on at least six occasions.

The Referral Order also cites two cases as examples of cases in which Rudrakumaran failed to raise dispositive issues in his briefing before the Court or else raised claims that had not been exhausted at the administrative level.

Finally, the Referral Order raises concerns about Rudrakumaran's conduct before the Ninth Circuit in *Suntharalinkam v. Gonzales, 488 F.3d 1121 (9th Cir. 2007)*. In addition to noting Rudrakumaran's filing of an untimely motion to file an oversized brief in that case, the Referral Order suggests that Rudrakumaran strategically withdrew his client's petition for review in bad faith at a late stage possibly to avoid a potentially unfavorable *en banc* ruling that may have had a negative impact on immigrant litigants in the Ninth Circuit.

4

## A. Twenty-Seven Cases Dismissed For Rudrakumaran's Failure to File Briefs

### 1. *Eight Cases in Which Rudrakumaran Successfully Moved to Reinstate*

Of the 27 cases which were dismissed for Rudrakumaran's failing to comply with scheduling orders, the Referral Order lists eight that were successfully reinstated following motions by Rudrakumaran, in which he typically attributed his defaults to "professional and personal commitments." *See Zhang v. Ashcroft*, No. 02-4066; *Kovalyk v. Ashcroft*, No. 02-4363, *Dreni v. Ashcroft*, 03-4741, *Piranej v. Ashcroft*, No. 04-0309, *Zhang v. Ashcroft*, No. 04-2836, *Ganash v. Gonzales*, No. 05-0915, *Chowdury v. Gonzales*, No. 05-1530, *Thavendran v. Gonzales*, No. 05-2723.

While in a few instances, his reasons for failing to file the brief were due to neglect of the petition in favor of ongoing negotiations with the government, *see, e.g. Zhang, Kovalyk, Dreni*, the primary reason for his defaults was negligent practice management and apparently overwhelming obligations between his practice and his public service commitments to the LTTE movement. *See, e.g.*, Nov. Tr. 17:2-25; 45:15-46:14; 69:24-70:12. His practice of requesting extensions was sporadic, even within the same case. *See, e.g., id.* at 46:22-48:4. In some instances he made such motions, in others, he simply did not. He testified to a habit of procrastination, and his case management and calendaring efforts were poor and he tended to work reactively. *See, e.g., id.* at 18:2-8; 59:2-11; 70:3-12

Rudrakumaran admitted his negligence was a major factor contributing to his conduct, and that he had taken advantage of the Court's "generosity." *See, e.g., id.* at 52:25-53:3; 84:11-12; 133:10-13. In other words, he expected and relied on the Court to grant extensions, reinstatements, and be otherwise forgiving of his failure to comply with requirements. Rudrakumaran said that it had never crossed his mind that the Second Circuit would refuse to reinstate a case (at least until they began do so). *Id.* at 60:5-8. Rudrakumaran said that he was shocked when the Second Circuit initially refused to grant his motion to reinstate in *Zhang v. Ashcroft*, 04-2836 in June 2006 (on reconsideration, the motion was granted). *Id.* at 108:18-23. Nonetheless, in *Zhang* and in *Chowdury* (where Rudrakumaran's motion for an extension of time was unusually referred to the Non-Argument Calendar Panel for further consideration in mid 2006) the Court did seem to indicate that granting Rudrakumaran's motions would no longer be automatic. *Id.* at 122:16-123:16. Yet, Rudrakumaran's pattern of failing to adhere to deadlines continued. In contrast, Mr. Rudrakumaran said that with very few exceptions, he never missed a deadline before the BIA, because he understood that they would not be forgiving under any circumstances. *Id.* at 53.

Rudrakumaran testified that while he did not appreciate it at the time, he now understands that he put his clients at risk by relying on the Court to provide him opportunities to rectify his defaults. *Id.* at 130:23-131:3 (admitting that he put a client at risk by defaulting on his meritorious petition); *see also id.* at 54:13-55:6; 72:21-73:10. The Committee is particularly troubled by Rudrukumaran's conduct in *Dreni v. Ashcroft*, No. 03-4741. Mr. Dreni's petition for review was dismissed by the Court in April 2005. Only four months later, in August, did Rudrakumaran file a motion for reinstatement. In his motion to reinstate the petition, Rudrakumaran explained to the Court that he believed that the government had agreed to remand the case to the BIA, but that belief turned out to be false, and it took him some time to reconcile

his belief with the government's position. Respondent's April 19, 2011 Submission, Tab CCC. Nonetheless, Rudrakumaran agrees that he put the client at real risk for deportation if the mandate had issued during those intervening months (as was a serious possibility since the mandate usually issues within two months of the dismissal). Nov. Tr. 80-81.

Ultimately, the eight cases were all reinstated and not permanently prejudiced by Rudrakumaran's default. *See Zhang v. Ashcroft*, No. 02-4066 (remanded to BIA by stipulation); *Kovalyk v. Ashcroft*, No. 02-4363 (dismissed on merits); *Dreni v. Ashcroft*, 03-4741 (same); *Piranej v. Ashcroft*, No. 04-0309 (successfully obtained remand to BIA); *Zhang v. Ashcroft*, No. 04-2836 (appeal ultimately withdrawn at desire of client); *Ganash v. Gonzales*, No. 05-0915 (dismissed on merits); *Chowdury v. Gonzales*, No. 05-1530 (same); *Thavendran v. Gonzales*, No. 05-2723 (success on the merits). Nonetheless this Committee finds clear and convincing evidence that, as to at least the two reinstated cases where relief was obtained on appeal, Rudrakumaran's failure to comply with scheduling orders created an unnecessary and substantial risk of potential injury to his clients because meritorious appeals would have been defaulted had reinstatement not been granted. Under the ABA Standards the negligent failure to act with reasonable diligence causing injury *or* potential injury to the client warrants a public reprimand. ABA Standards § 4.43. It bears emphasis that lack of diligence causing a real risk of even potential injury is a very serious professional failing.

2.    *Two Cases in Which Rudrakumaran Unsuccessfully Moved to Reinstate*

The Referral Order cites two cases in which Rudrakumaran filed unsuccessful motions to reinstate. *Razan v. Ashcroft*, 04-3259 was dismissed in February 2006 for Rudrakumaran's failure to comply with the scheduling order. Without knowing his client had left the United States to return to Sri Lanka, Rudrakumaran filed a motion to reinstate the case. Nov. Tr. 133:21-24. But the Court denied Rudrakumaran's motion to reinstate in May 2006. The earliest record of Rudrakumaran's attempting to inform his client that his petition had been dismissed is a letter dated July 25, 2006. Respondent's November 16, 2010 Submission, Tab T. Rudrakumaran testified that at least for clients with whom he is not in close contact, like Mr. Razan, he generally does not inform them that their case has defaulted unless reinstatement is denied. Nov. Tr. 136:7-18. The letter to Mr. Razan indicates that his case had been dismissed but offers no explanation why; it also indicates that Rudrakumaran left a message on his client's answering machine. The client paid Rudrakumaran $4000, but never received a refund. *Id.* at 142:4-25. However, in his final submission Rudrakumaran denied that his default caused any actual harm to his client, as the client abandoned his claim to asylum by voluntarily departing the country during the pendency of the proceeding, thereby mooting the issues raised in his petition. Respondent's June 3, 2011 Submission at 5.

In *Lathpandurage v. Gonzalez*, 05-3327, Rudrakumaran represented his client on a petition for review from a BIA order. The docket reflects multiple instances in which Rudrakumaran asked for extensions in which to file his papers; one order granting such extension notes that "[a]ny further extension request will be decided by a judge of the Court and will not be granted absent extraordinary circumstances." Docket Entry of 2/13/2006. (Despite this language, an additional extension was granted one month later, see Docket Entry of 3/20/2006.) After the case was dismissed in April 2006, Rudrakumaran filed a motion to reinstate, which the Court denied in June 2006.

6

As with *Razan*, in his final submission to the Committee, Rudrakumaran denies that his default in *Lathpandurage* caused any actual harm to his client. Respondent's June 3, 2011 Submission at 6. According to Rudrakumaran, "the likelihood that their petition would have been granted was virtually nil." *Id.* Rudrakumaran testified on the merits of this case, however, that "I believe in almost all the cases I take, at least more than 50 percent, I think I can get something." Nov. Tr. 149:11-13. Further, Rudrakumaran noted that after the case was dismissed, his former client asked him to represent his daughter's petition for status adjustment based on marriage, suggesting that the client was happy with his services, despite the outcome of his case. *Id.* at 144:14-19.

With respect to these two cases we find clear and convincing evidence of a lack of reasonable diligence causing injury or potential injury to the client. In *Razan*, Rudrakumaran has not made any kind of showing that the appeal presented no issues having a reasonable prospect of success; also that the client would leave the country was not known to Respondent at the time of his misconduct. As for *Lathpandurage*, Respondent's claim of lack of merit does not directly address the issues presented on appeal and a review of the proposed appellate brief indicates that a substantial question was presented. This constitutes at a minimum clear and convincing evidence of potential injury.

### 3. *Seventeen Cases in Which Rudrakumaran Never Moved to Reinstate*

In 17 cases (out of 27), Rudrakumaran did not move to reinstate the case following its dismissal. Many of these cases are more accurately characterized as cases in which Rudrakumaran failed to withdraw the case after the client expressed a desire not to continue or for other reasons, making pursuit of the petition not necessary. *See, e.g., Diagana v. Ashcroft*, 02-4545 (Rudrakumaran lost touch with the client who was reluctant to pay for continued representation given the merits of the petition, Nov. Tr. 155:2-6); *Prakash v. Ashcroft*, 03-4038 (petitioner decided not to proceed and to instead seek status adjustment through marriage, Nov. Tr. 195:4-24); *Oganesian v. Ashcroft*, Nos. 03-4083 and 05-4193 (petitioner preferred instead to pursue administrative remedy and not incur cost of pursuing the appeal, Mar. Tr. 134:14-135:4); *Varga v. Ashcroft*, 04-5186 (petition was moot after client's separate marriage petition successfully adjusted client's status, Mar. Tr. 176:5-13); *Thavendran v. Ashcroft*, No. 03-40258 (Rudrakumaran let the first petition lapse after a second case was filed on behalf of this client as a habeas petition intended to cure the jurisdiction deficiencies in the first petition); *Maricar v. Ashcroft*, 04-40566 (petition based on marriage was moot after husband and wife separated while petition was pending and petitioner returned to India, Mar. Tr. 159:14-20); *Thavalingam v. Gonzalez*, 05-4452 (client wished to withdraw his petition and return to his home country, Mar. Tr. 191:8-18); *Conate v. Gonzalez*, 06-3997 (client mooted petition by leaving the U.S. for Canada and seeking asylum there, Mar. Tr. 217:2-21); *Salazar De Riviera v. Gonzales*, No. 06-2161 (client agreed to withdraw petition because of slim probability of success after CAMP conferences failed to result in positive result but extensive delay in filing motion to withdraw occurred due to client's illness, Ex. H).[1]

---

[1] In another case, *Nalepka v. Gonzalez*, No. 06-3366, Rudrakumaran speculated (but could not remember) that he had let the case lapse because the client had either obtained or preferred to pursue an administrative remedy through another lawyer. The Committee lacks sufficient evidence to establish the veracity of this claim.

In some instances, Rudrakumaran's failure to withdraw the case was strategic in order to extend his client's stay of deportation affected by the pendency of the petition, perhaps while allowing time for the development or resolution of an administrative remedy. *See, e.g.,* Nov. Tr. 196:18-20; Mar. Tr. 235:10-236:2. Nonetheless, Rudrakumaran admitted he failed to show respect to the Court by failing to withdraw petitions he knew were not being pursued. Mar. Tr. 176:21-22, and has testified that his present intent is to withdraw cases rather than letting them lapse. *Id.* at 176:24-177:5; 236:8-21.

In some cases, Rudrakumaran admits that the default was due to negligent oversight, though there were reasons not to pursue reinstatement. *See Momot v. Ashcroft*, No. 03-4546 (client did not want to pursue moving to reinstatement after discussions with government to reopen at BIA level failed, Mar. Tr. 147:21-148:6); *Danshov v. Ashcroft*, No. 03-4547 (companion case); *Jusic v. Ashcroft*, No. 04-6272 (let case lapse after client intended to retain a different attorney to file brief, but was not relieved as attorney of record); *Ramasamyachry v. Ashcroft*, 05-0117 (client was deported after petition was dismissed for unrelated reasons rendering habeas petition challenging detention moot, Nov. Tr. 174:7-9).

Two other cases from this category merit further discussion. First, the Referral Order describes *Kamal v. Gonzales*, 05-1171:

> Rudrakumaran sought two extensions of time, only to then file a motion to withdraw his client's case. After this Court denied that motion on the basis that Rudrakumaran had to submit a statement showing the client was, in fact, requesting withdrawal, the case was dismissed for failing to file a brief.

Rudrakumaran acknowledged the accuracy of this synopsis but disputes the Court's docket entry from December 14, 2006. The docket indicates that Rudrakumaran's motion to withdraw was rejected on November 22, 2006 because Rudrakumaran failed to include an affidavit confirming his client's intent to withdraw. The Court's docket entry of December 14, 2006 indicates that the clerk "spoke with Katherine from the office of the petitioner's attorney in reference to counsel submitting a statement stating that his client wishes to withdraw the petition. She stated that the client was to arrive at the office today to discuss whether the client wishes to withdraw the petition."

According to Rudrakumaran, by December 2006 his client had already agreed to withdraw the case, and his client's scheduled visit to the office referred to in the docket entry was in order to prepare an affidavit confirming the client's intent to withdraw. However, according to Rudrakumaran the client never came to his office. Nov. Tr. 209:8-14. Rudrakumaran provided an affidavit from Mr. Kamal, dated December 14, 2010, confirming that having been told by Rudrakumaran that his chances of success were low, he decided to withdraw the petition before the briefing deadline passed, and that Rudrakumaran asked him to come to his office to prepare an affidavit, but that he never went to Rudrakumaran's office or signed an affidavit. Ex. D, Tab HH.[2] Ultimately, the evidence does not meet the clear and convincing

---

[2] Rudrakumaran provided phone records and an affidavit from Kathryn Dennler (Rudrakumaran's former assistant who is referenced in the court's docket entry), but neither are conclusive. *See* Ex. A, Tab C; Ex. E, Tab QQ.

standard necessary.for the Committee to find that Rudrakumaran attempted to withdraw the petition without his client's consent. In fact, the evidence points to the opposite conclusion.

Finally, the Referral Order describes *Lakshman-Senaviratne v. Ashcroft*, 04-4136:

> [T]he petitioner sought reinstatement on the grounds that Rudrakumaran had provided ineffective assistance of counsel. Appearing *pro se*, the petitioner stated that he had "honestly believed" a brief had been filed on his behalf, until Rudrakumaran informed him several months later that the case had been dismissed, without explaining why. Lakshman-Senaviratne averred that he had only discovered a brief had never been filed when he checked the court record. This Court denied petitioner's reinstatement motion in November 2008.

Rudrakumaran told the Committee that the client's statement to the court – that he "honestly believed" a brief had been filed on his behalf – was untrue. While Rudrakumaran admits that the petition was dismissed due to his own negligence, *Mar. Tr.* 171:4-8, he denies that he had ever told the client that a brief had been filed, *Nov. Tr.* 169:20-25. Rudrakumaran explained that the client's claim for asylum had been denied at the Immigration Court level, because corroborating evidence – an article describing conditions for the client's family in Sri Lanka – had not been translated in time for the hearing before the Immigration Judge (a task Rudrakumaran had agreed to undertake). After the petition before the Second Circuit was dismissed, Rudrakumaran lost touch with the client for a time despite attempts to contact him. When he resurfaced, Rudrakumaran advised him that rather than seeking to reinstate the petition for review, he was better off filing a claim of ineffective assistance of counsel before the BIA alleging that Rudrakumaran had incompetently failed to obtain the necessary translation. If successful, this strategy would have allowed the translation to be entered as corroborating evidence, and increase his chances of obtaining asylum. For reasons unknown to Rudrakumaran, Mr. Lakshman-Senaviratne did not take that advice, but rather sought the reinstatement of his petition *pro se*. *See* Mar. Tr.162-174. Without testimony from Mr. Lakshman-Senaviratne, which the Committee could not reasonably obtain, the evidence on this point does not rise to establishing a violation by the required clear and convincing standard.

The Committee finds clear and convincing evidence that in at least the majority of these 17 cases Respondent knowingly ignored court orders without justification by failing either to file a brief or to follow proper procedure for withdrawing the petition for review. For example, taking the *Kamal* case, if the client statement evidencing a desire not to proceed could not have been obtained, the proper procedure was to offer the court good reason why such a statement should not be required. Taking on a legal representation is serious matter because the lawyer is limited as an ethical matter in the ability to terminate that relationship and the Court is entitled to be shown that the lawyer is proceeding in the matter on a basis consistent with his or her ethical obligations. The knowing failure to comply with a court order harms the due administration of justice, violated the lawyer's obligations as an officer of the Court and constitutes grounds for discipline. ABA Standards § 6.23.

B.    **Late Briefs, Late C/A Forms, Late Motions for Extensions of Time, and Motions to Withdraw the Petition After Briefing Deadline Passed.**

The Referral Order cites 9 instances in which Rudrakumaran filed briefs late, 6 cases where Rudrakumaran filed the C/A form late, 4 cases where a motion for an extension of time was filed after the deadline had passed, and 8 cases where Rudrakumaran withdrew the petition only after the briefing deadline had passed. Rudrakumaran's general explanation for these lapses is again his busy workload coupled with his public interest activities, habit of procrastination, lack of appreciation at the time for the seriousness of the conduct, and expectation that the conduct would not have consequences for his clients. *See, e.g.*, Mar. Tr. at 237:25-238:10; 239:16-240:6. The Committee found no evidence to reject Rudrakumaran's denial that he ever delayed a filing due to non-payment of fees from a client. *Id.* at 226:14-17. Ultimately, none of these cases was permanently prejudiced by these delays in filing. Nonetheless, here too the Respondent violated court orders without following proper procedure to obtain relief from those orders, and this too harms the due administration of justice and constitutes grounds for discipline.

### C.     Alleged Failure to Raise Issues

The Referral Order identifies two cases where Rudrakumaran failed to raise potentially dispositive issues that were thus waived. In the first case identified, *Lin v. Gonzales*, No. 06-3433, the evidence demonstrates that Rudrakumaran was not the attorney of record (or involved in the case) in October 2006 when the defective brief was filed, and did not become involved in the case until filing a petition for rehearing in October 2007. See Respondent's Submission of June 20, 2011, Tab KKK. Thus, the Committee finds that Rudrakumaran was not responsible for any waiver of issues in the *Lin* case.

In the second case, *Siuabalasingam v. Holder*, 08-2064, the Court criticized Rudrakumaran for purportedly failing to preserve a Convention Against Torture claim. Rudrakumaran explained that in his first brief before the Circuit in this case, he had briefed the CAT issue, which had been argued before the BIA. After the first brief was filed with this Court, he reached a stipulation with the government remanding the case to the BIA. Rudrakumaran understood – an understanding that is supported by the language of the stipulation – that on remand the BIA was only to reconsider one issue (which was not the CAT issue), and that he had already effectively preserved the CAT issue and did not need to raise it again. The Committee finds that if an error occurred here, it was an honest mistake that does not warrant discipline.

### D.     Conduct Before The 9th Circuit in *Suntharalinkam v. Gonzales*

The Referral Order states that it is notable that Rudrakumaran's pattern of late filing and belated withdrawals is not limited to this Circuit. The Order then cites two instances of possible misconduct in the same case, *Suntharalinkam v. Gonzales*, 488 F.3d 1121(9th Cir. 2007). Both incidents occurred in connection with a 15-judge *en banc* Ninth Circuit appeal following a successful outcome for Rudrakumaran's client before the original three judge appellate panel. One of the cited incidents is relatively straightforward. Respondent moved to file an oversized brief at the same time he filed the brief, which was itself filed one day late. While the motion was granted, Judge Kozinski would have denied the motion due to it tardiness and lack of justification and given Rudrakumaran five days to file a conforming brief. Rudrakumaran's conduct was clearly improper as Rudrakumaran acknowledged to the Committee. This example is therefore entirely confirmatory of the pattern of neglect already described.

10

The second incident is more complex. After oral argument, but before the *en banc* court reached a decision, Rudrakumaran moved to withdraw the appeal. The motion was granted over a dissent written by Judge Kozinski and joined by three other judges. The dissenters felt that the withdrawal was an imposition on the Court motivated by a conclusion that oral argument had not gone well and that from the perspective of Rudrakumaran and his *amici curiae*, bad law was about to be made. The dissenters felt that it was unclear that Rudrakumaran's client had truly consented to the withdrawal and would have required Rudrakumaran to obtain a written consent from his client before authorizing withdrawal.

Listening to the tape recording of the oral argument, it is apparent that lawyers like Rudrakumaran who represent asylum seekers could well have been concerned about what might be the outcome of the appeal. In an *en banc* appeal, prior panel decisions are fair game for reconsideration. Some of the judges in their questioning showed interest in overruling two 9th Circuit case law doctrines of benefit to asylum seekers. On the other hand, however, some judges advocated limiting another doctrine unhelpful to asylum seekers.

All were aware at the time of oral argument that Rudrakumaran's client was in Canada and not the United States and that his preference was to live in Canada where he had relatives. At the end of a long and contentious argument, first one and then another of the judges questioned why his appeal was being pursued and, in the substance and tone of what they said, invited, indeed in a listener's reasonable perception urged, Respondent to withdraw the appeal. Rudrakumaran resisted the invitation saying he wanted his client to have a fallback in the event asylum was denied in Canada.

Sometime after the oral argument Rudrakumaran had second thoughts. He approached his client in Canada and recommended that the appeal be withdrawn citing the Judges' desire that it be withdrawn. Rudrakumaran testified that his client consented, but because he was not sure his client understood all the legal implications, he also spoke with the lawyer in Canada handling the client's asylum application there who assured Rudrakumaran that the prospects for asylum in Canada were good in part because the client's sister had received asylum. At that point Rudrakumaran filed a motion to withdraw noting the questions from the bench during oral argument about why the appeal was being pursued, stating that he had discussed the matter with his client and his client's Canadian counsel and that he was moving to withdraw the appeal.

We do not view this incident as involving sanctionable misconduct. After the oral argument, and as confirmed by Judge Kozinski's dissent on the motion to withdraw, the risk of an adverse outcome for the client had likely increased and what could have been sustained on appeal was the Immigration Judge's adverse credibility determination. Not only would that have ruled out the United States as a fallback, it could have potentially prejudiced the Canadian application which was on hold pending the U.S. proceedings. Respondent confirmed with Canadian counsel that the prospects for asylum in Canada were good. From all that appears objectively, Rudrakumaran had good grounds to seek his client's consent to withdrawal. We do not find any ground for sanction in Rudrakumaran's disclosing to the client the urging of two judges that the appeal be withdrawn, given that concealing that known fact would likely have subjected him to criticism. On the whole, and without contrary testimony from his client, we see no basis to conclude that Rudrakumaran failed to get the valid consent of his client to withdraw the appeal.

11

## VII. Aggravating and Mitigating Factors

The sheer number of instances and pattern of behavior over a multiple year period where Rudrakumaran violated this Court's orders and created at least risk of prejudice – and in a few instances, discussed further below, actual prejudice to his clients – favors a more severe sanction in this matter. *See* ABA Standards § 9.22(c), (d). Nonetheless, there are a number of mitigating factors, including the clear and convincing evidence that Rudrakumaran is both a zealous advocate for his clients and devoted representative of the Tamil people, which on balance tend toward a more lenient sanction.

The record contains clear and convincing evidence that Rudrakumaran repeatedly violated D.R. 6-101(a)(3) ("[a] lawyer shall not . . . [n]eglect a legal matter entrusted to the lawyer." ) by his practice of frequent and regular violations of scheduling orders. The Committee finds that clear and convincing evidence demonstrates that these failures were prejudicial to the administration of justice. D.R. 1-102(A)(5), (7); *see also* Rules 8.4(d) (h). *See also* Rules 1.1(c)(1),(2); 1.3(c). At the time of the infractions, Rudrakumaran failed to appreciate that this behavior put his clients at risk, and assumed that the Court would, if asked, reinstate those cases despite his failings. Rudrakumaran regretfully explained that he repeatedly took advantage of what he described as this Court's "generosity."

Two aspects cause this Committee particular concern. In *Razan v. Ashcroft*, 04-3259, Rudrakumaran testified that he failed to file the relevant brief on time because he had lost contact with the client. After this Court denied a motion to reinstate the petition, Rudrakumaran summarily informed the client five months later that his case had been dismissed without explanation as to why. This was unfair to the client because had the client known the reason why the appeal was dismissed, he could have considered further steps. Also in these circumstances of neglect, Respondent, at a minimum, should have refunded the client's fee.

There is also clear evidence that Respondent proceeded recklessly. In *Lathpandurage v. Gonzalez*, 05-3327, this Court had stated in an earlier order "any further extension request will . . . not be granted absent extraordinary circumstances," yet Rudrakumaran continued to push his luck at the risk of his client.[3]

On the mitigation side, first and foremost is Respondent's clear acknowledgement that his conduct was wrong and the steps he has taken to prevent recurrence of that misconduct. The Committee finds that he now appreciates the seriousness of his ethical failings. He has made organizational improvements to his practice and prioritized compliance with this Court's orders. Since receiving notice of the Referral Order, Rudrakumaran has implemented a number of new procedures in his office: he has committed to maintaining a better calendar through additional office assistance and organized procedures; he has resolved to institute better recordkeeping concerning his communications with clients and the court; and he has committed to perform at least four hours of office- and case-management CLE each year for the immediate future. See Ex. C, Tab K. As of March 2011, Rudrakumaran had two part-time assistants in his office; he also plans to hire a full-time employee and two part-time volunteers to assist him in his political advocacy on behalf of the transnational government. Mar. Tr. 8:9-22, 11:13-20. Since the

---

[3] The Court, however, did grant one further extension despite this apparent unequivocal language.

Court's adoption of the new procedural rules in January 2010, Rudrakumaran testified that he has not missed a deadline with the Court and understands that such deficiencies will no longer be tolerated. *Id.* at 8:5, 118:13-15. Given Rudrakumaran's remorse and commitment to both a changed perspective and changed office and calendar management, the Committee finds the risk of continued misconduct to be low. In addition Rudrakumaran's general zealousness and apparent competence in the representation of his clients are mitigating factors. The evidence shows that he has often been an effective advocate and has obtained successful results for his clients, sometimes on a *pro bono* basis. The Committee found his testimony regarding his unwavering and heartfelt commitment to his clients credible, and his testimony evidenced a grasp of immigration law and a creativity and persistence that undoubtedly serves his clients well.

Finally, Rudrakumaran was cooperative and forthcoming with the Committee. He was fully responsive to the Committee's requests for information and not evasive in responding to the Committee's questions.

## VIII. Recommendation

Under all the circumstances, the Committee recommends that Rudrakumaran be publically reprimanded for his conduct, and that he be required to complete eight hours of CLE in law office management, and for a two year period to submit biannual status reports of the frequency, if any, of late filed briefs or motions, or any non-excused non-compliance with a scheduling order of any sort before any Court.

13